1   MARC PICKER, ESQ. (SBN 3566)
    MARC PICKER, ESQ., LTD.
2   729 Evans Avenue
    Post Office Box 3344
3   Reno, NV 89505-3344
    Telephone: 775/324-4533
4   Facsimile: 775/324-5444

5   DONALD YORK EVANS, ESQ. (SBN 1070)
    216 E. Liberty Street
6   Post Office Box 864
    Reno, Nevada 89504
7   Telephone: 775/348-7400
    Facsimile: 775/348-4604

8
    CAL J. POTTER, III, ESQ. (SBN 1988)
9   POTTER LAW OFFICES
    1125 Shadow Lane
10  Las Vegas, NV 89102
    Telephone: 702/385-1954
11  Facsimile: 702/385-9081

12              **UNITED STATES DISTRICT COURT**

13                  **DISTRICT OF NEVADA**

14                          * * *

    ELIZABETH ANN DOUGHERTY as co-
15  special administratrix of the Estate of
    PATRICK JAMES CAVANAUGH SR.;        Case No.
16  PATRICK JAMES CAVANAUGH, JR., as
    special administrator of the estate of
17  PATRICK JAMES CAVANAUGH, SR.,
    and PATRICK JAMES CAVANAUGH,
18  JR., AIKI CAVANAUGH and PATRICK
    JAMES "PJ" CAVANAUGH,

19                                      **COMPLAINT AND JURY DEMAND**

            Plaintiffs,
20
        vs.
21
    E.K. MCDANIEL in his official capacity as
22  WARDEN at ELY STATE PRISON (ESP);
    DEBRA BROOKS in her official capacity
23  as ASSOCIATE WARDEN FOR
    OPERATIONS at ESP; ADAM ENDEL in
24  his official capacity as ASSOCIATE
    WARDEN FOR PROGRAMS at ESP;
25  THEODORE D'AMICO, M.D, MEDICAL
    DIRECTOR for Nevada Department of
26  Corrections; ROBERT BANNISTER,
    M.D., MEDICAL DIRECTOR for the
27  Nevada Department of Corrections;
    STEVEN MacARTHUR, M.D.; MAX
28  CARTER; STATE OF NEVADA
    DEPARTMENT OF CORRECTIONS as
    nominal Defendants; JOHN DOES 1

1  through 15, inclusive; BLACK & WHITE
   CORPORATIONS 1 through 15, inclusive;
2  RED AND WHITE MUNICIPAL ENTITIES
   1 through 15, inclusive,
3
       Defendants.
4  _____/

5
       Plaintiffs  PATRICK JAMES CAVANAUGH, JR., special administrator of the estate
6
   of PATRICK JAMES CAVANAUGH, SR.; ELIZABETH ANN DOUGHERTY, co-special
7
   administratrix of the Estate of PATRICK JAMES CAVANAUGH SR., and PATRICK JAMES
8
   CAVANAUGH, JR., AIKI CAVANAUGH and PATRICK JAMES "PJ" CAVANAUGH, by and
9
   through their counsel, Marc Picker, Esq., of Marc Picker, Esq., Ltd., Donald York Evans,
10
   Esq., and Cal J. Potter, III, Esq. and Lawrence W. Freiman, Esq. of Potter Law Offices,
11
   hereby allege, complain and aver against Defendants, and each of them, as follows:
12
                                   **JURISDICTION**
13
       1.      This Court has subject matter jurisdiction over this action pursuant to 28
14
   U.S.C. § 1343 in that claims herein arise under the federal civil rights statutes, and
15
   pursuant to 28 U.S.C. § 1331, in that federal questions exist.  Supplemental jurisdiction
16
   exists over state law claims pursuant to 28 U.S.C. § 1331.  Venue is proper in this
17
   district and in this, the unofficial northern division of this district, because the
18
   Defendants are subject to personal jurisdiction here, and the claims arose here.
19
                                 **NATURE OF CASE**
20
       2.      This is an action for damages and for attorney's fees and costs brought
21
   by PATRICK JAMES CAVANAUGH, JR., who is in the process of applying to be the
22
   personal representative of the estate of PATRICK JAMES CAVANAUGH, SR.,
23
   (hereinafter referred to as "Mr. CAVANAUGH") and ELIZABETH ANN DOUGHERTY as
24
   co-special administratrix of the Estate of PATRICK JAMES CAVANAUGH SR.  Mr.
25
   CAVANAUGH alleges that the defendants, and each of them, being in violation of the
26
   Fourth and Fourteenth Amendments to the Constitution and laws of the United States
27
   of America, unlawfully and under color of authority, violated the plaintiff's rights by
28
   failure to provide adequate medical treatment to Mr. CAVANAUGH to the point of his

1   death.

2       The acts committed against Mr. CAVANAUGH:

3       a.    Violated the Fourth, Eighth and Fourteenth Amendments to the

4   Constitution and laws of the United States of America;

5       b.    Were tortious under the laws of the State of Nevada and the common law.

6       Claims are stated for violation of the civil rights of the Plaintiff, for failure to

7   provide necessary medical treatment to Mr. CAVANAUGH, for inflicting cruel and

8   unusual punishment upon Plaintiff, for the infliction of intentional emotional distress on

9   the Plaintiff, and for failure to attend to Plaintiff's medical needs in a timely manner.

10                                  **PARTIES**

11      3.    Plaintiff PATRICK JAMES CAVANAUGH, JR., is the son and duly

12  appointed special administrator and ELIZABETH ANN DOUGHERTY is the co-special

13  administratrix of the estate of PATRICK JAMES CAVANAUGH, SR., who at all times

14  relevant hereto was an inmate of Ely State Prison (hereinafter "ESP"), County of White

15  Pine, State of Nevada, having been convicted of first degree murder.

16      4.    Plaintiffs PATRICK JAMES CAVANAUGH, JR., AIKI CAVANAUGH and

17  PATRICK JAMES "PJ" CAVANAUGH are the heirs to the estate of PATRICK JAMES

18  CAVANAUGH, SR.

19      5.    Defendant E.K. McDANIEL, (hereinafter "McDANIEL") is sued herein as

20  an individual and in his official capacity as WARDEN at ESP at the time, and he is and

21  at all times relevant and to our knowledge a resident of the County of White Pine, State

22  of Nevada.  In doing the acts alleged herein, he acted individually and as Warden at Ely

23  State Prison, located in the County of White Pine, State of Nevada, under color of state

24  law.

25      6.    Defendant DEBRA BROOKS in her official capacity as ASSOCIATE

26  WARDEN OF OPERATIONS (hereinafter "BROOKS´") is sued herein as an individual

27  and in her official capacity as ASSOCIATE WARDEN OF OPERATIONS at ESP at the

28  time, and she is and at all times relevant and to our knowledge a resident of the County

    of White Pine, State of Nevada.  In doing the acts alleged herein, she acted individually

and as Associate Warden - Operations at Ely State Prison, located in the County of White Pine, State of Nevada, under color of state law.

7.      Defendant ADAM ENDEL (hereinafter "ENDEL") is sued herein as an individual and in her official capacity as ASSOCIATE WARDEN OF PROGRAMS at ESP at the time, and he is and at all times relevant and to our knowledge a resident of the County of White Pine, State of Nevada.  In doing the acts alleged herein, he acted individually and as Associate Warden - Programs at Ely State Prison, located in the County of White Pine, State of Nevada, under color of state law.

8.      Defendant THEODORE D'AMICO, M.D., is and/or was the MEDICAL DIRECTOR of Nevada Department of Corrections, who supervises the clinical staff and operations of medical, mental health and dental services. In doing the acts alleged herein, he/she acted under color of state law as an employee of Nevada Department of Corrections. Further, Defendant D'AMICO's acts, including the training, supervision and retaining of Nevada Department of Corrections medical staff, were all done pursuant to custom and policy of Nevada Department of Corrections.

9.      Defendant ROBERT BANNISTER, M.D., is and/or was the MEDICAL DIRECTOR of Nevada Department of Corrections, who supervises the clinical staff and operations of medical, mental health and dental services. In doing the acts alleged herein, he/she acted under color of state law as an employee of Nevada Department of Corrections. Further, Defendant BANNISTER's acts, including the training, supervision and retaining of Nevada Department of Corrections medical staff, were all done pursuant to custom and policy of Nevada Department of Corrections.

10.      Defendant STEVEN MacARTHUR, M.D., is and/or was the staff physician at ESP during the incidents complained of herein and was personally responsible for providing and directing medical treatment for Mr. CAVANAUGH and other inmates at ESP.

11.      Defendant MAX CARTER, is and/or was a physician's assistant employed by the Nevada Department of Corrections to provide medical services and treatment to inmates at ESP and more specifically he provided medical services and treatment to

1    Mr. CAVANAUGH.

2        12.    Defendant NEVADA DEPARTMENT OF CORRECTIONS (hereinafter

3    "NDOC"), is a duly constituted political subdivision of the State of Nevada and the

4    employer of ESP, whose acts were all done pursuant to custom and policy of

5    Defendant NDOC.

6        13.    Plaintiffs do not know the true names and capacities or involvement,

7    whether individual, corporate, associate, partnership or otherwise of the Defendants

8    named herein as JOHN DOES 1 through 15, inclusive; BLACK & WHITE

9    CORPORATIONS 1 through 15, inclusive; or RED AND WHITE MUNICIPAL ENTITIES

10   1 through 15, inclusive.  Plaintiffs are informed and believe, and upon such information

11   and belief allege, that each of the Defendants designated herein as DOE, BLACK &

12   WHITE CORPORATION or RED AND WHITE MUNICIPAL ENTITIES is negligently or

13   otherwise legally responsible in some manner for the events and happenings referred to

14   herein, and that each negligently or otherwise caused injury or damages proximately

15   suffered by the Plaintiffs, as more particularly alleged herein.  Plaintiffs pray leave to

16   amend this Complaint to show their true names and capacities when the same have

17   been finally determined.

18       14.    At all times pertinent hereto, the named Defendants herein were acting by

19   and through its authorized employees, agents or other representatives, who were

20   operating within the course and scope of their representative capacity, and whose

21   conduct has been ratified by each said Defendant.

22       15.    At all times pertinent hereto, the named Defendants were operating by,

23   through and in consort with other individuals, partnerships and/or corporations yet to be

24   named in this action, and was acting in furtherance of a civil conspiracy with said

25   unnamed individuals, partnerships and/or corporations.

26                          **FACTS OF THE CASE**

27       16.    On or about January 1985, Mr. CAVANAUGH was incarcerated within the

28   Nevada Department of Corrections, and at the time of the incidents alleged herein at

     the Ely State Prison.

17.     Mr. CAVANAUGH, was an insulin dependent diabetic, who lived in the Ely State Prison infirmary for at least two years before his agonizing death on April 10, 2006.

18.     Immediately after his death he was transported to a funeral home. There is no record of an autopsy or a mortality review in his file.

19.     Plaintiffs are informed and do believe that the listed cause of death was complications of Diabetes Mellitus, peripheral gangrene of both lower extremities, hypertension, and congestive heart failure - all untreated.

20.     Plaintiffs are informed and do believe that in the best of circumstances (hospitalization, quick antibiotics, and early detection) gangrene has a thirty percent (30%) mortality rate, but untreated, it is essentially one hundred perent (100%) fatal.

21.     Plaintiffs are informed and believe that Mr. CAVANAUGH received almost no treatment for his illnesses, so his slow, painful death in the Ely State Prison infirmary was virtually assured.

22.     Plaintiffs are informed and do believe that given the profound and unmistakable smell of putrefying flesh, there can be no question that every medical provider and correctional officer in that infirmary was acutely aware of Mr. CAVANAUGH's condition.

23.     Although Mr. CAVANAUGH was an insulin-dependent diabetic, Plaintiff is informed and does believe there was an unsigned order in his chart stopping all his medications, including his insulin on August 28, 2003, without indication as to why this was done.

24.     Plaintiffs are informed and do believe that subsequently, Insulin was ordered sporadically thereafter but was never given for a period of three (3) years.

25.     Plaintiffs are informed and do believe that during this entire period Mr. CAVANAUGH's blood sugars were dangerously high, running from 300 to 400, and that he developed leg ulcers due to diabetes as early as 2001, indicating that his disease was quite severe and negligently managed for years.

26.     Plaintiffs are informed and do believe that no medical consideration was

1    ever given to surgically removing the gangrenous limbs even though this procedure

2    could have saved Mr. CAVANAUGH's life.

3         27.    As a result, Ely State Prison medical staff literally left Mr. CAVANAUGH to

4    rot to death.

5         28.    Plaintiffs are informed and do believe that prison medical records suggest

6    that Mr. CAVANAUGH "would not let" people come into his cell and that he started

7    refusing all medications except for aspirin. Progress notes in his chart detail increasing

8    paranoia and probable dementia. Moreover, gangrene is known to derange the mind.

9         29.    Given Mr. CAVANAUGH's demented state, an order was obtained to use

10   force if necessary to move him from cell to cell once a week so that excrement, trash,

11   food and other filth could be cleaned up. In contrast, there is no order to force life-

12   sustaining medications or psychiatric medications.

13        30.    Plaintiffs are informed and do believe that a typed "chronological for

14   forced med panel" is present in Mr. CAVANAUGH's medical chart, but there is no

15   response from the panel and no evidence that such an order was ever sought.

16        31.    Plaintiffs are informed and do believe that on April 19,2002, Mr.

17   CAVANAUGH's medications were being crushed and put in his food for a brief period of

18   time. This practice was discontinued without explanation.

19        32.    Plaintiffs are informed and do believe that although a signed and

20   notarized full, non-limited Power of Attorney Authorization giving power to Elizabeth Ann

21   Dougherty is present in his chart, there is no indication that his guardian was ever

22   contacted regarding his medical care and the need to treat his various grave medical

23   conditions, despite his dementia.

24        33.    Apparently prison officials decided not to force life-sustaining medications

25   on Mr. CAVANAUGH, even though he clearly was not able to make medical decisions

26   himself, and they did so without consulting his legal guardian.

27        34.    It is the opinion of at least one medical professional familiar with Mr.

28   CAVANAUGH's medical record that this decision for Mr. CAVANAUGH was one of

     prolonged agony, unnecessary suffering and death.

35.     Plaintiffs are informed and do believe that even during his last days before death, where an order is given for five milligrams of morphine sulfate every four (4) to five (5) hours to alleviate his terrible pain and suffering, there is no evidence that this palliative order was ever carried out. Instead, it appears the order was ignored and Mr. CAVANAUGH was left to suffer.

36.     Plaintiffs are informed and do believe that much of Mr. CAVANAUGH's prison medical record is missing, including little to no record of the 1980's or 1990's.  In addition, the nurse's notes have large temporal gaps that are impossible to explain in the normal course of nurse note taking.

37.     Plaintiffs are further informed and do believe that the Physician Progress Notes in Mr. CAVANAUGH's prison medical record  are also very sparse, starting on March 2, 2002, and ending on the date of death, as well the medication sheets only start at February 24, 2002 and end at date of death.

38.     Plaintiffs are informed and do believe that there are also no laboratory reports in Mr. CAVANAUGH's entire prison medical chart, which is very difficult to explain for a man with his dangerous health problems.

39.     Plaintiffs are further informed and do believe that the health provider progress notes prefer to label the nature of Mr. CAVANAUGH's illness as "cellulitus" but it is clear that he suffered from severe, untreated gangrene.

40.     Plaintiffs are informed and do believe that by stopping Mr. CAVANAUGH's medications, it was perfectly clear to any trained medical personnel that Mr. CAVANAUGH would die, and die a most miserable death.

41.     On April 10, 2006, Mr. CAVANAUGH died in the infirmary at Ely State Prison.

42.     Plaintiffs are informed that Mr. CAVANAUGH filed grievances and raised complaints regarding the inappropriate medical treatment or complete lack of any treatment he has received.

43.     Defendant McDANIEL is personally aware of such grievances and has denied each, despite Mr. CAVANAUGH's deteriorating medical condition and his being

in constant pain.  Each grievance was specifically reviewed by Defendants ENDEL and BROOKS prior to such being forwarded to Defendant McDANIEL.

44.    Each of the named health provider Defendants were personally aware of Mr. CAVANAUGH's medical condition and were deliberately indifferent to his need for serious medical treatment.

45.    Plaintiffs have been required to retain the services of  Marc Picker, Esq., Ltd., Donald York Evans, Esq., and Cal J. Potter, III, Esq. to prosecute this action and are entitled to a reasonable attorney's fees and costs therefor under 42 U.S.C. §1988.

WHEREFORE, Plaintiffs pray for relief as more fully enumerated below.

**FIRST CLAIM FOR RELIEF**

(Violation of 42 U.S.C.A. § 1983)

(Custom and Policy)

46.    Mr. CAVANAUGH refers to paragraphs 2 through 45 herein and by this reference incorporates them herein as though they set forth fully here.

47.     Defendants knowingly made, modified and carried out policies of the State of Nevada and its correctional department regarding the inappropriate or complete lack of medical treatment and care for Mr. CAVANAUGH.

48.    At all times material hereto, Defendants were deliberately indifferent to Mr. CAVANAUGH's medical condition and refused and failed to provide proper medical treatment.

49.    Mr. CAVANAUGH followed all administrative procedures to obtain remedy for his deteriorating medical condition but all such efforts have been denied.

50.    Mr. CAVANAUGH followed all medical orders and directions while in custody but his physical condition continued to deteriorate until death.

51.    Having ignored Mr. CAVANAUGH's medical needs and having blatantly disregarded Mr. CAVANAUGH's deteriorating medical condition, all Defendants subjected themselves to liability under the provisions of 42 U.S.C. § 1983 to Mr. CAVANAUGH for subjecting him to the risk of, and -- as it turned out -- the actual occurrence of, his painful and agonizing death.

As a direct and proximate result of Defendant's actions and inactions toward Mr. CAVANAUGH, Defendants are liable in an amount to be more fully determined at trial.

WHEREFORE, Plaintiffs pray for relief as more fully enumerated below.

**SECOND CLAIM FOR RELIEF**

(Violation of 42 U.S.C.A. §1983)

(Deliberate Indifference to Serious Medical Need)

52.     Mr. CAVANAUGH refers to paragraphs 2 through 51 herein, and by this reference, incorporates them herein as set forth fully here.

53.     Defendants, and each of them, were deliberately indifferent to Mr. CAVANAUGH's constitutional rights by failing to provide proper care by staff members for necessary medical needs for Mr. CAVANAUGH.

54.     Defendants, and each of them, deliberately ignored Mr. CAVANAUGH's serious and life-threatening medical needs.

55.     The Eighth Amendment guarantees adequate medical care for inmates.

56.     Defendants, and each of them, through their deliberate indifference and failure to provide adequate medical care, denied Mr. CAVANAUGH the minimal civilized measure of life's necessities resulting in his death.

57.     Said deliberate indifference and failure to provide adequate medical care subjected Mr. CAVANAUGH to cruel and unusual punishment in violation of the Eighth Amendment.

58.     As a direct and proximate result of the Defendants' deliberate indifference, Mr. CAVANAUGH  suffered serious pain and death and is entitled to compensation for the aforementioned damages, and  the Defendants, and each of them, have subjected themselves to liability for those damages pursuant to the common law and the statutory law of the State of Nevada.

As a direct and proximate result of Defendant's actions and inactions toward Mr. CAVANAUGH, Defendants are liable in an amount to be more fully determined at trial.

WHEREFORE, Plaintiffs pray for relief as more fully enumerated below.

**THIRD CLAIM FOR RELIEF**

(Violation of 42 U.S.C.A. 1983)

(Custom and Policy)

59.     Mr. CAVANAUGH refers to paragraphs 2 through 58 herein and by this reference incorporates them herein as though set forth fully here.

60.     As a custom and policy, Defendants, and each of them, typically refuse to provide medical care to inmates and, in the instant matter, failed and refused to provide necessary medical care to Mr. CAVANAUGH.  This failure constituted deliberate indifference to Mr. CAVANAUGH's right to due process.

61.     As a direct and proximate result of the Defendants' deliberate indifference in failing to provide medical care for Mr. CAVANAUGH's medical needs and in previous acts of deliberate indifference, Defendants, and each of them, have established custom and policy for Defendants' employees.

62.     In doing the acts mentioned in this Third Claim for Relief, Mr. CAVANAUGH has suffered and is entitled compensation for the aforementioned damages.

As a direct and proximate result of Defendant's actions and inactions toward Mr. CAVANAUGH, Defendants are liable in an amount to be more fully determined at trial.

WHEREFORE, Plaintiffs pray for relief as more fully enumerated below.

**FOURTH CLAIM FOR RELIEF**

(Negligent Training, Supervising and Retention)

63.     Mr. CAVANAUGH refers to paragraphs 2 through 62 herein and by this reference incorporates them herein as though set forth fully here.

64.     In their respective roles as employers and supervisors of personnel, Defendants, and each of them, had a duty to insure that their employees would conduct themselves on the job in a manner that was not adverse, inimical, or damaging to the safety and welfare of the inmates with whom they came in contact.

65.     By refusing Mr. CAVANAUGH necessary medical treatment and blatantly disregarding Mr. CAVANAUGH's life-threatening medical condition, Defendants, and each of them, breached that duty to Mr. CAVANAUGH thereby proximately and actually

- 11 -

1  causing the damages that are described herein.

2      66.    Defendants, and each of them, acting with deliberate indifference to the

3  health and rights of Mr. CAVANAUGH aforementioned, failed to adequately train and

4  supervise its employees, so as to avoid constitutional violations such as those suffered by

5  Mr. CAVANAUGH as alleged herein, subjecting said Defendants to liability under 42 U.S.C.

6  §1983.

7      67.    As a direct and proximate result of Defendant's actions and inactions toward

8  Mr. CAVANAUGH, Defendants are liable in an amount to be more fully determined at trial.

9      As a direct and proximate result of Defendant's actions and inactions toward Mr.

10  CAVANAUGH, Defendants are liable in an amount to be more fully determined at trial.

11      WHEREFORE, Plaintiffs pray for relief as more fully enumerated below.

12                          **FIFTH CLAIM FOR RELIEF**

13                          (Breach of Duty of Due Care)

14      68.    Mr. CAVANAUGH refers to paragraphs 2 through 67 herein and by this

15  reference incorporates them herein as though set forth fully here.

16      69.    Defendants, and each of them, had a duty to exercise reasonable care so

17  as to provide adequate medical care and treatment for Mr. CAVANAUGH and, in doing

18  the acts mentioned hereinabove, breached that duty.

19      70.    As a direct and proximate cause of these Defendants' deliberate

20  indifference, Mr. CAVANAUGH suffered agonizing pain and death, and is entitled to

21  compensation for the aforementioned damages, and Defendants have subjected

22  themselves to liability for those damages pursuant to the common law and the statutory

23  law of the State of Nevada.

24      As a direct and proximate result of Defendant's actions and inactions toward Mr.

25  CAVANAUGH, Defendants are liable in an amount to be more fully determined at trial.

26      WHEREFORE, Plaintiffs pray for relief as more fully enumerated below.

27                          **SIXTH CLAIM FOR RELIEF**

28                          (Punitive Damage Claim)

        71.    Mr. CAVANAUGH refers to paragraphs 2 through 70 herein and by this

reference incorporates them herein as though they were set forth in full in this place.

72.    The egregious and outrageous conduct of Defendants, and each of them, was done with deliberate indifference to and callous disregard for the constitutional rights of Mr. CAVANAUGH, with malice and evil motive, entitling him to an award of punitive and exemplary damages.

As a direct and proximate result of Defendant's actions and inactions toward Mr. CAVANAUGH, Defendants are liable in an amount to be more fully determined at trial.

WHEREFORE, Plaintiffs pray for relief as more fully enumerated below.

**SEVENTH CLAIM FOR RELIEF**

**(Conspiracy)**

73.    Mr. CAVANAUGH refers to paragraphs 2 through 72 herein and by this reference incorporates them herein as though they were set forth in full in this place.

74    At all times during the events described above, the prison officials were engaged in a joint venture.  The individual officials assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

75.    The Defendants and each of them conspired for the purpose of depriving Mr. CAVANAUGH of his Constitutional rights.

76.    That during the period of time of the said incident all of the Defendants and each of them and others unnamed, combined, confederated and agreed together and with each other knowingly and willfully engage in the following acts, among others, to cause harm to Mr. CAVANAUGH as follows:

(a)    To violate Mr. CAVANAUGH'S civil rights pursuant to 42 U.S.C. § 1983 by acting in a deliberate indifferent manner towards Mr. CAVANAUGH by failing to provide proper care for necessary and life threatening medical needs;

(b)    To violate Mr. CAVANAUGH'S civil rights pursuant to 42 U.S.C. § 1983 by acting in a deliberately indifferent manner, ultimately leading to his death.

77.    As a direct and proximate cause of the defendants and each of their actions Mr. CAVANAUGH suffered damages, including serious physical and mental

pain and suffering, emotional distress and death depriving him of his constitutional rights as set forth herein.

As a direct and proximate result of Defendants' actions and inactions toward Mr. CAVANAUGH, the Defendants are liable in an amount to be more fully determined at trial.

WHEREFORE, Plaintiffs pray for relief as more fully enumerated below.

**EIGHTH CLAIM FOR RELIEF**

**(Medical Malpractice/Negligence)**

78.     Mr. CAVANAUGH refers to paragraphs 2 through 77 herein and by this reference incorporates them herein as though they were set forth in full in this place.

79.     This action is also brought to seek redress for the torts of wrongful death, medical negligence and medical malpractice against Defendant Dr. Steven MacArthur. Said cause of action in supported by the sworn report of Dr. Simone Russo attached hereto and incorporated herein as Exhibit 1.

80.     Defendants, and each of them, owed a statutory duty to Mr. CAVANAUGH pursuant to NRS § 208.131(4) for supervision, custody, treatment, care, security and discipline of all offenders in their care and custody and NRS § 209.131(6) to take proper measures to protect the health and safety of the staff and offenders in the institutions and facilities of the department and breached that statutory duty by failing in the care of Mr. CAVANAUGH, directly causing the death of Mr. CAVANAUGH while he was under the jurisdiction of the Defendants.

81.     Defendants, and each of them, acted wantonly, willfully, oppressively and maliciously toward Mr. CAVANAUGH under the terms of the Department of Prisons, Chapter 209, in failing to properly care for Mr. CAVANAUGH pursuant to NRS § 209.331, "An offender may be taken outside an institution...for medical evaluation or treatment," all to Plaintiff's damages in an amount to be determined at trial.

82.     As a proximate result of the conduct of Defendants, and each of them, Mr. CAVANAUGH suffered and Plaintiffs continue to suffer through their loss, humiliation and mental anguish, all to Plaintiff's damages in an amount to be determined at trial.

83.     The above-mentioned acts of Defendants were willfull, wanton, malicious and oppressive and justify an award of exemplary damages in an amount to be determined at trial.

84.     As a direct and proximate result of the actions of the Defendants, and each of them, the Plaintiffs have been required to obtain the services of an attorney to prosecute this action, and are therefore entitled to reasonable attorneys fees pursuant to 42 U.S.C. § 1988.

**PRAYER**

WHEREFORE, Plaintiffs PATRICK JAMES CAVANAUGH, JR., special administrator of the estate of PATRICK JAMES CAVANAUGH, SR., and ELIZABETH ANN DOUGHERTY as co-special administratrix of the Estate of PATRICK JAMES CAVANAUGH SR., and PATRICK JAMES CAVANAUGH, JR., AIKI CAVANAUGH anD PATRICK JAMES "PJ" CAVANAUGH, as heirs to the estate of PATRICK JAMES CAVANAUGH, SR.,  pray to this Court for the following relief:

1.     For an award of nominal damages;

2.     For an award of general damages in a sum to be determined at trial;

3.     For an award of special damages in a sum to be determined at trial;

4.     For an award of punitive damages in a sum to be determined at trial;

5.     For declaratory and injunctive relief as prayed for hereinabove;

6.     For an award of reasonable attorney's fees and costs of suit; and

7.     For such other and further relief as the Court deems just and proper.

...

...

...

...

...

...

...

1

**DEMAND FOR JURY TRIAL**

2       YOU, AND EACH OF YOU, WILL PLEASE TAKE NOTICE that Plaintiffs hereby

3   demands a trial by jury of all the issues in the above-entitled matter.

4       DATED this 9th day of April, 2008.

5   MARC PICKER, ESQ., LTD.                    DONALD YORK EVANS, LTD.

6
     */s/ Marc Picker*                              */s/ Donald Evans*
7   MARC  PICKER, ESQ.                          DONALD YORK EVANS, ESQ

8
    POTTER LAW OFFICES
9   .

10   */s/ Cal J. Potter, III*
    CAL J. POTTER, III, ESQ.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28